AO 106 (Rev. 5/85) Affidavit for Search Warrant

# United States District Court

Southern **DISTRICT OF** California

`07 DEC -7 PM 2:02`
`CLERK, U.S. DISTRICT COURT`
`SOUTHERN DISTRICT OF CALIFORNIA`

BY: _____ DEPUTY

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)
Express Mail EB444133593US addressed to General Auto Part, 1404 C. Central Ave, Sarasota FL 34236

**APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT**

CASE NUMBER: 07 MJ 2838

I, P.G. Garn, being duly sworn depose and say:

I am a(n) U. S. Postal Inspector                     and have reason to believe
           *Official Title*

that ☐ on the person of or ☒ on the premises known as (name, description and/or location)
The above described Mail article, which is in the custody of the U. S. Postal Service

in the Southern District of California

there is now concealed a certain person or property, namely (describe the person or property)
Controllled substances, materials, and documents reflecting the distribution of controlled substances through the United States Mail, including money paid for controlled substances, in violation of Title 21, United States Code, Sections 841 (a) (1), 843(b) and 846

which is (give alleged grounds for search and seizure under Rule 41(b) of the Federal Rules of Criminal Procedure)
evidence and contraband.

in violation of Title 21 United States Code, Section(s) 841 (a) (1), 843(b) and 846.
The facts to support the issuance of a Search Warrant are as follows:
See the attached affidavit of P. G. Garn, Postal Inspector (incorporated by reference here in).

Continued on the attached sheet and made a part hereof.    ☒ Yes    ☐ No

_____
Signature of Affiant

Sworn to before me, and subscribed in my presence

12/7/2007                                        at  San Diego, Calif
Date                                                 City and State

RUBEN B. BROOKS                                  _____
Name and Title of Judicial Officer               Signature of Judicial Officer
U.S. MAGISTRATE JUDGE

## AFFIDAVIT FOR SEARCH WARRANT

I, P. G. Garn, being duly sworn hereby depose and state:

1. I am a United States Postal Inspector assigned to the San Diego Field Office of the Postal Inspection Service and am detailed to the San Diego Integrated Narcotic Task Force as a Task Force Officer. My duties include investigating violations of the Drug Abuse Prevention and Control Act.

2. This affidavit is submitted in support of an application for a search warrant for the following parcel:

    Express Mail EB444133593US addressed to General Auto Part, 1404 C. Central Ave, Sarasota FL 34236 with a return address of Rojas Auto Part, 250 Granger Ave, National City, CA 91950.

3. I have been employed as a Postal Inspector for over 17 years, and have been employed by the Postal Service for over 22 years. I am currently assigned to the San Diego Narcotic Task Force as a Task Force Officer. In 1990 and 1995, I received formal training from the Postal Inspection Service regarding individuals using the U.S. Mail to transport controlled substances and proceeds from the sale of controlled substances as well as the use of Postal Money Orders to launder the proceeds of controlled substances transactions. I have also received formal training from the California Highway Patrol (1994) and United States Postal Inspection Service (1992) regarding the illicit use of controlled substances and the objective symptomatology of individuals who are under the influence of controlled substances. In 1994, I received formal training from the Drug Enforcement Administration (DEA) regarding narcotic investigations including street, mid-level, and major trafficking organizations; presumptive field testing, drug recognition, objective symptomatology of drug use, and investigative techniques. In 2002, I received formal drug

1

interdiction training sponsored by the Drug Enforcement Administration conducted in San Diego, CA regarding drug interdiction investigations as well as national and international drug trafficking trends. In June and July 2003, I received formal training from the International Narcotic Interdiction Association regarding trends in international and national drug trafficking and investigative methods. In August 2003, I received formal training from the DEA. In May 2005, I received additional formal training from the International Narcotic Interdiction Association regarding trends in international and national drug trafficking and investigative methods. In August 2007, I received formal training from the Department of Justice OCDEFT and Asset Forfeiture programs on international and national drug trafficking trends. Since, 1994, I have been a member of the California Narcotics Officer Association and have received formal and informal training from this organization as well as read articles written by members regarding drug trafficking and narcotics investigations. Since 1994, I have been a member of the Western States Information Network and have received briefings on drug trafficking trends and investigations by agents, officers, prosecutors and analysts as well as conducted training for other officers, agents, prosecutors and analysts involved in narcotics investigations. I have also conducted training for Postal Inspectors regarding the use of the Postal service to facilitate drug trafficking and money laundering as well as officials with the Australian Federal Police and state and local agencies in the State of California.

4.   Since 1991, I have been involved in hundreds of investigations involving the shipment of controlled substances including marijuana, methamphetamine, cocaine, heroin, opium and pharmaceuticals as well as drug proceeds through the U.S. Mail and other commercial shipping companies such as Federal Express and United Parcel Service (UPS). I have also investigated individuals who have used Postal Money Orders to launder the proceeds from controlled substance transactions. These

investigations have resulted in the seizure considerable amounts of illicit drugs, drug related assets and drug related evidence as well as numerous arrests of individuals for violations of federal and state controlled substances laws.

5. Based upon my training, experience and discussions with other agents, I know the following in summary:

    (a) Individuals who regularly handle controlled substances leave the scent of controlled substances on the currency and other items they handle. Proceeds from these sales are often stored in close proximity to the controlled substances, thereby transferring the odor of the controlled substance to the monies and packaging materials. Narcotic canines are trained to alert on the scents of controlled substances.

    (b) The Postal Inspection Service and DEA Narcotic Task Force Commercial Interdiction Team have worked aggressively to limit the use of shipping companies and the U.S. Mail for the transportation of controlled substance through these companies.

    (c) Ongoing investigations have disclosed that Priority/overnight and "two day" parcel deliveries have become a method of choice by drug dealers for the transportation of contraband or the proceeds of narcotic sales.

    (d) It is also known that Southern California is a source region for controlled substances being mailed throughout the United States. The proceeds from these narcotic transactions are then transported via the U.S. Mails and other communication facilities back to Southern California, the source of the controlled substances.

    (e) Drug dealers prefer the U.S. Mail, (but will sometimes utilize commercial shipping companies), specifically "Express Mail" or "Priority Mail," for the

narcotic or narcotic proceeds transportation for various reasons, some of which are listed below:

1. Items sent via "Express Mail" or "Priority Mail are considered to be first-class mail, therefore, cannot be examined without a Federal Search Warrant.

2. "Express Mail" is usually requested to be delivered by the next day's mail.

3. "Priority Mail" is usually requested to be delivered within two days of mailing.

4. Dispatch times for "Express Mail" are specific and are controllable by the mailer/shipper.

5. Any delay to the mail is an indication to the mailer the mailed item(s) have been possibly compromised by law enforcement agencies to obtain a search warrant.

6. While it is not always the case that a delay of "Express Mail" or "Priority Mail" is for law enforcement purposes, those involved in illegal transactions have found that the odds are against delays in deliveries of "Express Mail" or "Priority Mail" by United States Postal Service.

7. "Express Mail" and Priority Mail" may weigh up to 70 pounds and is desired for large volume shipments.

6. The information contained in this affidavit is based upon information I have gained from my investigation, my personal observations, my training and experience as well as information related to me by other Postal Inspectors and law enforcement officers and Postal employees. Since this affidavit is being submitted for the limited purpose

4

of securing a search warrant, I have not included each and every fact known to me concerning this investigation.

7. On December 5, 2007, Inspectors Richard Tanael, Ana Flores and I were conducting a routine interdiction at the Midway Processing and Distribution Facility in San Diego, CA. We became suspicious of Express Mail EB444133593US addressed to General Auto Part, 1404 C. Central Ave, Sarasota FL 34236 with a return address of Rojas Auto Part, 250 Granger Ave, National City, CA 91950. for reasons which included:

   1. The size, shape and appearance were similar to parcels we had identified in previous investigations containing controlled substances.
   2. The telephone number 619-608-4610 listed for the sender, Rojas Auto Part, was not in service.
   3. I learned from Postal employees that the listed return address, 250 Granger Ave in National City, CA was not good.

8. On December 5, 2007, San Diego County Probation Officer Michael Anderson and his trained drug detection dog, "Kilo", conducted an individual exterior inspection of the subject parcel. Officer Anderson told me that Kilo alerted to the presence of the odor of controlled substances coming from the parcel. Inspectors then secured the parcel pending an application for a search warrant.

9. I have been advised of the qualifications of the dog handler, Officer Anderson and his narcotic detection dog as described in Attachment A, which is filed in conjunction herewith and incorporated by reference herein.

10. In addition, Detective Steve A. Sloan, Dog Trainer for the San Diego Police Department Canine Training Section, certifying official for the California Narcotic

5

Canine Association and a court recognized narcotic detection canine expert, told me the following in summary:

A. Because of the absorption of the odor of controlled substances, and the narcotics detection canine's inherently keen sense of smell, the narcotic detection canine will continue to alert on the container or item depending on the length of exposure to the controlled substances, the specific controlled substance and the ventilation of the item or container. The common belief is all currency in circulation is contaminated with narcotics. It has been Detective Sloan's experience that a properly trained narcotic detection canine will not alert to all currency. Detective Sloan said the most relevant factor regarding alerts on currency is the threshold amount of narcotic odors that is set in the training of the narcotics detection canine. Detective Sloan's experience is that canine training must include the establishment of a lower threshold of approximately one gram of a controlled substance or more to ensure the canine is alerting to more than the average contamination. Average contamination is reported to occur through normal handling. The canine must also be "proofed" from numerous odors including currency on a regular basis to maintain consistency. These substances have included food, plastic bags and wrap, tape controlled substance adulterants. Circulated and non-circulated U.S. currency. Proofing is a method used in training to ensure the canine alerts only to odors for which it is trained to alert.

B. Officer Anderson told me that he agrees with the above statement and he includes proofing as part of his canine training.

11. Based on the facts set forth in this affidavit, I submit that there is probable cause to believe controlled substances, notes and/or currency from the illegal sale and mailing

of controlled substances are being concealed in the Express Mail article as described and seek the issuance of a search warrant directing the search of the articles as described above and the seizure of the article, any controlled substances, currency, and/or materials and documents reflecting the distribution of controlled substances, all in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846.

P. G. Garn

Postal Inspector

Sworn to before me, and subscribed in my presence, on this 7th day of Dec., 2007.

U. S. Magistrate Judge

ATTACHMENT A
For
Michael J. Anderson and K-9 Kilo

Michael Anderson has been a Probation Officer for the San Diego County Probation Department for the past 17 years and is currently assigned to the East County Gang Task Force. Officer Anderson is also the Probation Department's Narcotic K-9 handler. In addition, Officer Anderson assists the Jurisdictions Unified for Drug and Gang Enforcement (J.U.D.G.E.), San Diego Integrated Narcotics Task Force (NTF), Field Action Specialty Team (FAST), and local Post Offices as well as the San Diego Police Department in searches for narcotics. Officer Anderson is a member of the California Narcotics Officers Association as well as the California Narcotic Canine Association.

On July 2003, he was assigned the responsibility of training and working with the San Diego Probation Department's narcotic K-9, Kilo, ID#K1. Between July and August 2003, San Diego Police Officer Steve Sloan trained Kilo and Officer Anderson in the area of narcotics. Officer Anderson and Kilo have been involved in training exercises where known controlled substances, containers, or paraphernalia were hidden. Kilo's alert consists of physical and mental reactions, which include a heightened emotional state and coming to a complete "sit" when his physical position allows.

On August 16, 2003 after 40 hours of training in the detection of marijuana, heroin, methamphetamine and cocaine, California Narcotics Canine Association certifying official Tom Iverson certified Kilo as 100% proficient in the detection of the same.

On November 14, 2003, Kilo was re-certified by California Narcotics Canine certifying official Tom Moore.

On 5/03/2005, Kilo was re-certified by California Narcotics Canine certifying official Mary Bohnnett.

On 3/31/06, Kilo was re-certified by California Narcotics Canine certifying official Joe Priebe.

On 12/1/06, Kilo was re-certified by California Narcotics Canine certifying official Joe Priebe.

Prior to Officer Anderson and Kilo becoming certified as a team, Kilo received 100 hours of training in the detection of marijuana, heroin, methamphetamine and cocaine by California Narcotics Canine Association certifying official Mary Bohnnett. To date, Kilo has completed a total of 475 hours of training.